A90A1822. COOK v. THE STATE.
(404 SE2d 128)

McMURRAY, Presiding Judge.

Defendant was convicted of aggravated assault and this appeal followed the denial of his motion for new trial. *Held:*

1. Defendant first contends the trial court erred in denying his motion under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69), arguing that the State used its peremptory strikes in a racially discriminatory manner.

"If the defendant can establish a prima facie case of racial discrimination in the prosecutor's exercise of his peremptory challenges, the prosecutor must explain his exercise of peremptory challenges, and demonstrate that racially neutral criteria prompted the exercise of his peremptory challenges." *Gamble v. State*, 257 Ga. 325 (2) (357 SE2d 792).

The record in the case sub judice shows that defendant is black

and that the State used its ten peremptory challenges to exclude prospective black jurors. The State's attorney explained that he struck two prospective jurors because they have close relatives who have been subjects of criminal prosecutions. The State's attorney explained that the remaining eight strikes were used to exclude jurors who had recently served on criminal juries which returned verdicts of not guilty. Defendant argues that these explanations are unbelievable because the State's attorney asked only one question during voir dire and because two prospective white jurors, who had recently served on an acquitting criminal jury, were not struck by the State.

" 'Once the prosecution establishes a neutral explanation related to the particular case to be tried, the trial court then will have the duty to determine if the defendant has established purposeful discrimination. *Barton v. State*, [184 Ga. App. 258 (2), 259 (361 SE2d 250)]. The trial court's findings are, of course, entitled to great deference, *Batson*, supra . . . and will be affirmed unless clearly erroneous. *Gamble v. State*, 257 Ga. 325, 327[, supra]; accord *Durham v. State*, [185 Ga. App. 163, 165 (3), 166 (363 SE2d 607)]; *McCormick v. State*, 184 Ga. App. 687, 688-689 (362 SE2d 472) ((1987)); *Killens v. State*, 184 Ga. App. 717, 720 (362 SE2d 425) ((1987)); *Evans v. State*, 183 Ga. App. 436, 440 (359 SE2d 174) ((1987)). Because the U. S. Supreme Court has cautioned us that the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility . . . a reviewing court ordinarily should give those findings great deference. *Hillman v. State*, 182 Ga. App. 47, 48 (354 SE2d 673) ((1987)).' (Punctuation omitted.) *Glanton v. State*, 189 Ga. App. 505, 506-507 (376 SE2d 386) (1988). See also *Bess v. State*, 187 Ga. App. 185 (1) (369 SE2d 784) (1988)." *Kincey v. State*, 191 Ga. App. 300 (1) (381 SE2d 439).

In the case sub judice, we find no abuse in the trial court's determination that the State's explanations were credible and that the State's reasons for excluding the ten prospective black jurors were not aimed at purposeful discrimination. See *Kincey v. State*, 191 Ga. App. 300 (1), supra. Consequently, the trial court's denial of defendant's motion under *Batson v. Kentucky*, supra, was not erroneous.

2. Next, defendant contends the trial court erred in failing to charge the jury on self-defense, arguing that his "testimony established a prima facie case of self defense." This argument is not supported by the record.

Defendant was charged with aggravated assault in that he did "make an assault upon the [victim] with a deadly weapon, to wit: *a knife*." The victim testified that defendant attacked him and cut him on the hand and head with a "little pocketknife." Defendant testified that the victim started the fight and that he did not possess a knife during the altercation. Defendant explained on cross-examination

that he "couldn't tell [how the victim was stabbed, but speculated that the victim] might have cut hisself (sic) or . . . might have had a knife or something. . . ." This testimony does not authorize a finding that defendant used a knife against the victim in self-defense. See *Wilkerson v. State*, 183 Ga. App. 26, 28 (3) (357 SE2d 814). Consequently, the trial court did not err in refusing to give a charge on self-defense.

3. In his third enumeration, defendant contends the trial court erred in excluding testimony that the victim "had beaten him up on two previous occasions; one a little more than a month before the alleged stabbing."

A victim's prior acts of violence against a defendant are relevant in weighing the truth of a defendant's claim of justification. *Milton v. State*, 245 Ga. 20, 26 (262 SE2d 789). However, "in order to introduce evidence of the violent nature of the . . . victim, defendant must make a prima facie showing that the victim was the aggressor, was assailing defendant, *and defendant was honestly seeking to defend himself. Bennett v. State*, 254 Ga. 162, 164 (3) (326 SE2d 438) (1985); *Milton v. State*, 245 Ga. 20, 22[, supra]; *Dasher v. State*, 146 Ga. App. 118 (1) (245 SE2d 476) (1978). Whether these criteria have been met is a matter within the sound discretion of the trial court. *Curtis v. State*, 241 Ga. 125, 126 (1) (243 SE2d 859) (1978)." (Emphasis supplied.) *Hagans v. State*, 187 Ga. App. 216, 217 (1) (369 SE2d 536).

In the case sub judice, defendant's testimony authorized a finding that the victim was the aggressor and that the victim was assailing defendant, but there was no evidence that defendant honestly sought to defend himself with a knife during the fight. Defendant simply testified that he did not then have a knife and that he did not stab the victim. Consequently, since justification was not a defense to the stabbing, the trial court did not abuse its discretion in refusing to admit evidence of the victim's prior violent acts against defendant.

4. In his fourth enumeration, defendant contends the trial court "erred in failing to exclude from evidence an in custody statement allegedly made by [him] when all material parts of the statement were not served on the defendant ten days prior to trial as required by O.C.G.A. [§] 17-7-210."

At trial, a police officer testified that defendant's custodial "statement [included an admission] that he was hiding in the bushes . . ." before he stabbed the victim. Defense counsel objected and argued that this testimony is materially different from the statement the State gave him pursuant to defendant's OCGA § 17-7-210 demand. More specifically, defense counsel stated that the State responded to defendant's demand as follows:

" '[Defendant] admitted cutting [the victim] on 12/27/87. He claimed this was in retaliation for an earlier attack on him by [the

victim]. MPD Officers Babb, Rogers and Mazza witnessed the statement.' "

The State's attorney affirmed in open court that the above statement was "the statement [he] served on [defense counsel]" and argued that it was not necessary to notify defendant that the custodial statement included an admission by defendant that he "hid in the bushes and when the victim came by, he'd jumped on him" because the admission was not "inculpatory or exculpatory."

"OCGA § 17-7-210 (Code Ann. § 27-1302) provides in pertinent part: '(b) If the defendant's statement is oral or partially oral, the prosecution shall furnish, in writing, *all relevant and material portions of the defendant's statement . . .* (d) If the defendant's statement is oral, no relevant and material (incriminating or inculpatory) portion of the statement of the defendant may be used against the defendant unless it has been previously furnished to the defendant, if a timely written request for a copy of the statement has been made by the defendant.' " (Emphasis supplied.) *Van Kleeck v. State*, 250 Ga. 551 (1) (299 SE2d 735). In the case sub judice, defendant argues that the trial court should not have allowed the statement because "it introduces an element of lying in ambush."

We agree that the "ambush" portion of defendant's statement should have been made available to defendant. See *Huguley v. State*, 253 Ga. 709 (2), 710 (324 SE2d 729). "However, in *Wallin v. State*, 248 Ga. 29 (279 SE2d 687) (1981), where the state similarly provided the defendant with an incomplete in-custody statement, the Supreme Court applied the 'highly probable that it did not contribute to the verdict' test and found the error harmless." *Dickey v. State*, 179 Ga. App. 383, 384 (1), 385 (346 SE2d 864). The circumstances of the case sub judice demand the same result.

Lieutenant James Dominic Mazza of the City of Milledgeville Police Department testified that defendant's clothing was covered with blood when he arrived at the scene and that defendant stated to him that he had "just cut a boy." Lieutenant Mazza further testified that he later found the 16-year-old victim; that the victim had sustained serious bleeding lacerations to the head and that the victim identified defendant as the person who stabbed him. Two other City of Milledgeville police officers testified and corroborated Lieutenant Mazza's testimony. The victim testified and identified defendant as the person who stabbed him. Defendant testified and admitted to fighting with the victim on the night of the stabbing. This evidence was not only sufficient to meet the standard of proof required under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560), it overwhelmingly proved defendant's guilt. Thus, we find it highly probable that introduction of the tainted testimony did not contribute to the verdict.

18

5. In his final enumeration, defendant contends the trial court "erred in holding that [his] motion for new trial was waived when he altered the terms of defendant's sentence." This enumeration is without merit. The record shows that the trial court denied defendant's motion for new trial after considering the merits of defendant's claims.

*Judgment affirmed. Sognier, C. J., and Carley, J., concur.*

DECIDED FEBRUARY 20, 1991 —
REHEARING DENIED MARCH 11, 1991 — 

*Milton F. Gardner, Jr.*, for appellant.
*Joseph H. Briley, District Attorney, Al C. Martinez, Jr., Assistant District Attorney*, for appellee.